## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ADAMS ARMS, LLC,

      Plaintiff,

v.                             CASE NO.: 8:16-cv-1503-VMC-AEP

UNIFIED WEAPONS SYSTEMS, INC.,
AGUIEUS, LLC, MICHAEL BINGHAM,
CHRISTIAN QUINTANILLA AURICH, and
MAJOR GENERAL JAMES W. PARKER,

      Defendants.

_____/

### DEFENDANT, UNIFIED WEAPON SYSTEMS, INC.'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM TO PLAINTIFF'S COMPLAINT

Defendant, UNIFIED WEAPONS SYSTEMS, INC., through its undersigned counsel and pursuant to Fed. R. Civ. P. 8, hereby answers Plaintiff, ADAMS ARMS, LLC's *("Adams" or "Plaintiff")* Complaint as follows:

### *Introduction*

1.     Denied.

2.     Without knowledge and therefore Denied.

3.     Without knowledge and therefore Denied.

4.     Denied.

5.     Denied.

6.     Denied.

7.     Denied.

8.     Denied.

9.      Admit that Adams is seeking relief; Deny all other allegations of fact in the paragraph.

## Parties, Jurisdiction and Venue

10.      Admit.

11.      Admit that Unified Weapon Systems, Inc. is a Delaware corporation with a principal place of business in Hillsborough County, Florida.   Denied that Unified Weapon Systems, Inc., a Delaware corporation is a subsidiary of Aguieus.

12.      Admit.

13.      Admit that Michael C. Bingham is the managing member of Aguieus.   Denied that Michael C. Bingham is the Chief Operating Officer of Unified Weapon Systems, Inc.

14.      Admit.

15.      Denied that Major General Parker is a Director and the Senior Military Advisor for Unified Weapon Systems, Inc. Admit that General Parker is a retired Major General from the United States Army and resides in Hillsborough County, Florida.

16.      Admit for jurisdictional purposes only.

17.      Admit for jurisdictional purposes only.

## Factual Allegations

18.      Without knowledge as to Aguieus' communication with Adams "in early 2014".

19.       Without knowledge as to Michael C. Bingham's communications with Adams.

20.       Without knowledge as to Michael C. Bingham's communications with Adams.

21.       Without knowledge as to Michael C. Bingham's communications with Adams.

22.      Admit.

23.       Denied.

24.     Denied.

25.     The instrument speaks for itself.   Any other inference or allegation of the paragraph is Denied.

26.     Denied.

27.     Denied.

28.     Denied.

29.     Denied.

30.     Denied.

31.     Without knowledge as to Michael C. Bingham's communications with Adams.

32.     Without knowledge as to General Parker's communications with Adams.

33.     Without knowledge as to General Parker's communications with Adams.

34.     Without knowledge as to General Parker's communications with Adams.

35.     Without knowledge as to General Parker's communications with Adams.

36.     Without knowledge as to General Parker's communications with Adams.

37.     Denied.

38.     Denied.

39.     Denied.

40.     Without knowledge as to Michael C. Bingham or General Parker's communications with Adams.

41.     Denied.

42.     Without knowledge as to Michael C. Bingham's communications with Adams.

43.     Admit that Adams attended a demonstration of weapons in Peru.  Deny that Unified Weapons Systems, Inc. leveraged Adams' name.  Without knowledge as to Adams' knowledge.

44.     Denied.

45.     Without knowledge as to Michael C. Bingham's communications with Adams. Adams did not supply information to Unified Weapons Systems, Inc.

46.     Without knowledge as to Michael C. Bingham's communications with Adams. Denied as to the remaining allegations of the paragraph.

47.     Denied.

48.     Without knowledge as to Michael C. Bingham's communications with Adams.

49.     Without knowledge as to Michael C. Bingham's communications with Adams.

50.     Without knowledge as to Michael C. Bingham's communications with Adams. Denied as to the remaining allegations of the paragraph.

51.     Without knowledge as to Michael C. Bingham's communications with Adams.

52.     Without knowledge as to Michael C. Bingham's communications with Adams.

53.     Without knowledge as to Michael C. Bingham's communications with Adams.

54.     Denied.

55.     Without knowledge as to General Parker's communications with Adams.

56.     Without knowledge as to General Parker's communications with Adams.

57.     Admit that on December 18, 2015 FAME announced that UWSI had won a bid.

58.     Admit FAME's press release; otherwise  Denied.

59.     Denied.

60.     Denied.

61.     Denied.

62.     Denied.

63.     Denied.

64.     Denied.

65.     Denied.

66.     Admit.

67.     Admit.

68.     Denied.

69.     Denied.

70.     Without knowledge and therefore Denied.

### Count I
### (Breach of LOI – as to UWSI)

71.     Unified Weapons Systems, Inc. re-alleges its answers to paragraphs 1 through 70 herein.

72.     Denied.

73.     Denied.

74.     Denied.

75.     Denied.

76.     Denied.

### Count II
### (Breach of Confidentiality to NDA against all Defendants)

77.–83.   Count II is the subject of a Motion To Dismiss filed by Unified Weapons Systems, Inc.

### Counts III and IV
### (Breach of Confidentiality to NDA and Breach of

*Services Agreement against General Parker only)*

84.–95.   The allegations of Count III and IV are directed solely to another Defendant.

### Count V
### (Misappropriation under DTSA against all Defendants)

96.–108.   Count V is the subject of a Motion To Dismiss filed by Unified Weapons Systems, Inc.

### Count VI
### (Misappropriation under FUTSA against all Defendants)

109.   Unified Weapons Systems, Inc. re-alleges its answers to paragraphs 1 through 108 herein.

110.   Denied.

111.   Denied.

112.   Denied.

113.   Denied.

114.   Denied.

115.   Denied.

116.   Denied.

### Count VII
### (Unfair Competition under Lanham Act against UWSI)

117.   Unified Weapons Systems, Inc. re-alleges its answers to paragraphs 1 through 70 herein.

118.   Denied.

119.   Denied.

120.   Denied.

121.  Denied.

122.  Denied.

123.  Denied.

### Count VIII
### (Unjust Enrichment against UWSI and Aguieus)

124.  Unified Weapons Systems, Inc. re-alleges its answers to paragraphs 1 through 70 herein.

125.  Denied.

126.  Denied.

127.  Denied.

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Cause of Action)

As a separate and complete affirmative defense, Unified Weapons Systems, Inc. would show that Adams has failed to state causes of action against this Defendant.

## SECOND AFFIRMATIVE DEFENSE
### (Not a signatory to the LOI)

As a separate and complete affirmative defense, Unified Weapons Systems, Inc. would show that it was not a signatory to the "LOI" attached to Adams' complaint.

## THIRD AFFIRMATIVE DEFENSE
### (No authority)

As a separate and complete affirmative defense, Unified Weapons Systems, Inc. would show that neither Michael C. Bingham nor Aguieus, LLC has ever been authorized to execute the "LOI" on its behalf.

## FOURTH AFFIRMATIVE DEFENSE
### (Not a signatory to the Non-Disclosure)

As a separate and complete affirmative defense, Unified Weapons Systems, Inc. would show that it was not a signatory to any Confidential or Non-Disclosure Agreements with Adams.

## FIFTH AFFIRMATIVE DEFENSE
### *(Impossibility of Performance)*

As a separate and complete affirmative defense, Unified Weapons Systems, Inc. would show that the MOD Proposal failed to come to fruition and any of Adams' claims are barred by impossibility of performance.

## SIXTH AFFIRMATIVE DEFENSE
### *(Failure of Condition Precedent)*

As a separate and complete affirmative defense, Unified Weapons Systems, Inc. would show that the MOD Proposal contained conditions precedent which were not fulfilled.

## SEVENTH AFFIRMATIVE DEFENSE
### *(Failure of Condition Subsequent)*

As a separate and complete affirmative defense, Unified Weapons Systems, Inc. would show that the MOD Proposal contained conditions subsequent that were not fulfilled.

## EIGHTH AFFIRMATIVE DEFENSE
### *(Adams cause of MOD Failure)*

As a separate and complete affirmative defense, Unified Weapons Systems, Inc. would show that the failure to bring the MOD Proposal to contract was singularly due to the failure of Adams to develop or construct a rifle that met the specifications of MOD.

## NINTH AFFIRMATIVE DEFENSE
### *(No exposure to Confidential Information)*

As a separate and complete affirmative defense, Unified Weapons Systems, Inc. would show that Adams never provided it with *any* proprietary confidential information, technical data, trade secrets or know how that it didn't already possess, or that it had ready access to through public means.

## TENTH AFFIRMATIVE DEFENSE
### *(Voluntary exposure of information)*

As a separate and complete affirmative defense, Unified Weapons Systems, Inc. would show that Adams disclosed its proprietary confidential information, technical data and trade secrets voluntarily and openly to persons, private entities and governmental bodies without seeking to protect or preserve the purported secret character of the information, data and secrets, and has therefore waived any right to seek redress against any defendant in this claim.

## ELEVENTH AFFIRMATIVE DEFENSE
### *(Voluntary exposure of information)*

As a separate and complete affirmative defense, Unified Weapons Systems, Inc. would show that by Adams' actions in voluntarily disclosing what it purports to be proprietary confidential information, technical data and trade secrets, Adams is estopped from seeking redress against any defendant in this claim.

## TWELFTH AFFIRMATIVE DEFENSE
### *(Statute of Frauds)*

As a separate and complete affirmative defense, Unified Weapons Systems, Inc. would show that any claim against it by Adams is barred by application of Florida's Statute of Frauds.

## THIRTEENTH AFFIRMATIVE DEFENSE
### *(No use Confidential Information)*

As a separate and complete affirmative defense, Unified Weapons Systems, Inc. would show that it never employed proprietary, confidential information, technical data, trade secrets or know that uniquely or independently belonged to Adams.

## FOURTEENTH AFFIRMATIVE DEFENSE
### *(Set-Off)*

As a separate and complete affirmative defense, Unified Weapons Systems, Inc. would show that it is entitled to a set-off for the damages that it sustained in consequence of the tortious interference committed by Adams as described in the counterclaim below.

## FIFTEENTH AFFIRMATIVE DEFENSE
### *(Reversed Engineered Product or Process)*

As a separate and complete affirmative defense to Count VI, Unified Weapons Systems, Inc. would show that the subject product or process can be reversed engineered.

## SIXTEENTH AFFIRMATIVE DEFENSE
### *(Publicly Available Sources)*

As a separate and complete affirmative defense to Count VI, Unified Weapons Systems, Inc. would show that the subject product or process is widely attainable using publicly available sources and/or is known outside of the Adams' business.

## SEVENTEENTH AFFIRMATIVE DEFENSE
### *(Independent Development)*

As a separate and complete affirmative defense to Count VI, Unified Weapons Systems, Inc. would show that the subject product or process for a gas piston system can be independently developed as he has a license acquiring one, and/or has acquired such information in a "clean room" environment.

## EIGHTEENTH AFFIRMATIVE DEFENSE
### *(Lack of Requisite Economic Value)*

As a separate and complete affirmative defense to Count VI, Unified Weapons Systems, Inc. would show that the trade secrets lack the requisite economic value to qualify for trade secret protection.

WHEREFORE, Unified Weapons Systems, Inc. demands judgment in its favor, recover attorney's fees and costs as a prevailing party in this action if applicable, and for any further relief this Honorable Court deems just and proper under the circumstances.

## DEFENDANT/COUNTER-PLAINTIFF, UNIFIED WEAPONS SYSTEMS, INC.'S COUNTERCLAIM

Defendant/Counter-Plaintiff, UNIFIED WEAPONS SYSTEMS, INC., through its undersigned attorneys, and pursuant to the applicable Fed. R. Civ. P., hereby sues Plaintiff/Counter-Defendant, ADAMS ARMS, LLC., as follows:

### *Parties, Jurisdiction and Venue*

1.      Unified Weapons, Systems, Inc., is a Delaware corporation *("UWSI")*, with its principal place of business in Hillsborough County, Florida.

2.      Adams Arms, LLC is a Florida limited liability corporation *("Adams")* with its principal place of business in Odessa, Florida.

3.     Jurisdiction is conferred on this Court on the following claims pursuant to 28 U.S.C. § 1367.

4.     Venue is proper before this Court pursuant to 28 U.S.C. 1391(b) since Adams is either a resident of, or doing business in, this judicial district.  Furthermore, a substantial part of the events or omissions giving rise to the claims asserted in this Counterclaim occurred in this judicial district, and there is a Complaint between the parties pending in this district.

### *Adams Tortious Interference*

5.      On or about December 18, 2015, F.A.M.E., S.A.C., a Peruvian corporation *("FAME")*, selected the bid of UWSI concerning the acquisition of rifles in Peru.  FAME would manufacture and assemble the rifles while UWSI provided logistical assistance, including training on assembly.

6.     UWSI subsequently informed Adams that it was awarded the FAME bid.

7.     On or about May 16, 2016, UWSI and FAME entered into a written agreement. A copy of the agreement is attached hereto as **Exhibit "A"** *("FAME Agreement")*, and is also a matter of public record.

8.     The FAME Agreement specifies that FAME and UWSI agreed to manufacture assault rifles in FAME's facilities in Peru.

9.     On or about May 6, 2016, Adams' President and CEO wrote a scathing email to FAME officials concerning UWSI.  Adams falsely asserted that the rifles, which are the subject of the FAME Agreement, employ technology and parts that belong to Adams, and that fulfillment of the FAME Agreement by UWSI would subject FAME to liability from Adams *("Adams Email")*.  A copy of the Adams Email is attached hereto as **Exhibit "B"**.

10.     The Adams Email further informed FAME officials of threats that Adams would pursue legal action as a result of the pending FAME Agreement, and in fact, did so on June 10, 2016 when Adams filed its Complaint against UWSI.

11.     Adams knew of the existence of the FAME Agreement and still filed suit against UWSI.

12.     Through the FAME Agreement, UWSI had reasonable expectation that FAME would issue purchase orders to UWSI, providing it with substantial economic benefit, and of which the term would last for a period of up to fifteen (15) years resulting in millions, if not billions of dollars.

13.     The Adams Email was written by Adams with the specific and malicious intent of interfering with UWSI's agreement and ongoing relationship with FAME and disrupt the same.

14.     The lawsuit filed subsequent to the FAME Agreement was further evidence of the specific and malicious intent at interfering with UWSI's agreement and ongoing relationship with FAME and disrupt the same.

15.     Worse, the Adams Email implied that Adams had "major contacts in the key departments in Washington" and threatened that:  ". . . my major objective . . ." is to ". . . insure that anyone that did allow this solicitation to become *corrupt gets the punishment they deserve*."

16.     All conditions precedent to bringing this action have occurred, have been performed, or have been waived.

17.     UWSI has retained the law firm Englander Fischer, LLP to represent it in this action, and is obligated to pay Englander Fischer, LLP a reasonable fee for its services rendered herein.

### COUNT I
### *(Tortious Interference against Adams)*

18.     This is an action for damages in excess of $75,000.00, exclusive of interest, court costs and attorney fees.

19.     UWSI re-alleges paragraphs 1 through 17 as though fully set forth herein.

20.     UWSI and FAME entered into a written agreement.

21.     Adams knew or should have known the terms of the agreement.

22.     The Adams Email and subsequent lawsuit were intentionally sent or filed to interfere with UWSI's relationship with FAME.

23.     The Adams Email and subsequent lawsuit was an unjustified interference with the relationship of UWSI and FAME.

24.     As a direct and proximate result of its receipt of the Adams Email and complaint concerning this agreement has been filed in this Court, FAME has refused to issue any purchase orders for the rifles.

25.     Adams has tortiously interfered with UWSI's business relationship with FAME.

26.     UWSI has sustained damages as a result of Adams' intentional and unjustified interference with the FAME Agreement.

WHEREFORE, UWSI demands judgment for damages against Adams, including but not limited to, compensatory damages, interest, court costs of this action, attorney's fees if applicable, and any further relief this Honorable Court deems just and proper under the circumstances.

DATED this <u>13th</u> day of July, 2016.

BY:     <u>*/s/ Leonard S. Englander*</u>
        Leonard S. Englander
        *Lead Trial Counsel*
        Florida Bar No.: 198846
        Primary:  eservice@eflegal.com
        Beatriz McConnell

Florida Bar No.: 42119
Primary: bmcconnell@eflegal.com
Joseph Wesley Etter IV
Florida Bar No.: 83814
Primary: jetter@eflegal.com
ENGLANDER FISCHER
721 First Avenue North
St. Petersburg, Florida 33701
Telephone:  (727) 898-7210
Telefax:  (727) 898-7218
*Attorneys for UWS and Mr. Aurich*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this date a true and correct copy of the foregoing has been electronically was served through the CM/ECF Filing System, which will send notice to:  Jaime Austrich, Esq., jaustrich@slk-law.com, J. Todd Timmerman, Esq., ttimmerman@slk-law.com, Mindi M. Richter, Esq., mrichter@slk-law.com, 101 East Kennedy Boulevard, Suite 2800, Tampa, Florida 33602; Aguieus, LLC, c/o Matthew B. Sullivan, Esq., matthewbsullivan@aol.com,  4756 Central Avenue, St. Petersburg, FL 33711; Michael C. Bingham, 7441 Ambleside Drive, Land O'Lakes, FL 34637; Major General James W. Parker, U.S.A, Retired, 929 Allegro Lane, Apollo Beach, FL 33572.