**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ADAMS ARMS, LLC,**

    **Plaintiff,**

v.                                                     Case No.: 8:16-CV-1503-T-33AEP

**UNIFIED WEAPON SYSTEMS, INC.,**
**AGUIEUS, LLC,**
**MICHAEL C. BINGHAM,**
**CHRISTIAN QUINTANILLA AURICH, and**
**MAJOR GENERAL JAMES W. PARKER,**

    **Defendants.**

_____/

**MOTION TO DISMISS DEFENDANT UNIFIED WEAPONS**
**SYSTEM, INC.'S COUNTERCLAIM FOR TORTIOUS INTERFERENCE**

Plaintiff, Adams Arms, LLC ("AA"), moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the counterclaim for tortious interference asserted by Defendant Unified Weapons Systems, Inc. ("UWS"). UWS's counterclaim should be dismissed because it has not plead any facts or circumstances demonstrating that actions taken by AA impacted UWS's contractual or business relationship with the Peruvian Factory of Weapons and Ammunition from the Army S.A.C. ("FAME"). Without factual allegations that link any actions by AA to any alleged harm suffered by UWS, the counterclaim for tortious interference cannot stand and should be dismissed.

        **I.**        **FACTUAL ALLEGATIONS OF THE COUNTERCLAIM**

In December 2015, the Peruvian Factory of Weapons and Ammunition from the Army S.A.C. ("FAME") announced that Defendant UWS was the winning bidder on a

contract to provide rifles to the Peruvian Ministry of Defense ("MOD"). (Dkt. 52, Defendant/Counter-Plaintiff, Unified Weapons Systems, Inc.'s, Counterclaim ¶ 5 (hereinafter "Counterclaim")) UWS notified AA that UWS was awarded the FAME bid, and on May 6, 2016, AA's President and Chief Executive Officer sent an email to FAME officials concerning the bid award. (Counterclaim ¶¶ 6, 9 & Exhibit 2)

According to UWS, the May 6 email "falsely" asserted that the rifles subject to the bid employed technology belonged to AA and that fulfilment of the FAME Agreement would subject FAME to liability from AA. (*Id.* ¶ 9) The email also implied that AA's president and CEO had "major contacts" in Washington, D.C. and that AA's objective was to punish those involved with the FAME bid award. (*Id.* ¶ 15) The email informed FAME officials of AA's intent to pursue legal action. (*Id.* ¶ 10) UWS alleges that AA sent the email with the "specific and malicious intent" of interfering with the yet-to-be-entered FAME agreement and with the ongoing relationship between UWS and FAME. (*Id.* ¶ 13)

On May 16, 2016—ten days <u>after</u> the email—UWS and FAME entered into a written agreement specifying that UWS agreed to manufacture rifles at FAME's facilities in Peru. (*Id.* ¶¶ 7-8) UWS alleges it had a reasonable expectation that FAME would issue purchase orders resulting in a substantial economic benefit to UWS. (*Id.* ¶ 12)

On June 10, 2016, AA filed the present suit, and at the time of filing, AA knew about the existence of the FAME agreement. (*Id.* ¶¶ 10-11) UWS maintains that this litigation is further evidence of AA's specific and malicious intent to interfere with the FAME agreement and the concomitant business relationship. (*Id.* ¶ 14) UWS baldly alleges that the May 6, 2016 email and this lawsuit constitute an unjustified interference with UWS's business

relationship and that as a result of the email and lawsuit, FAME has refused to issue any purchase orders to UWS. (*Id* ¶¶ 23-24) UWS maintains that these events constitute tortious interference and that it suffered damages as a result, even though the FAME agreement was entered into after the email at issue and even though there is no allegation that the agreement has been terminated. (*Id.* ¶¶ 25-26)

## II.   LEGAL STANDARDS

### A.   Motions to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. To meet this plausibility standard, a plaintiff must plead facts that allow a court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Henry v. Jones,* 484 F. App'x 290, 291 (11th Cir. 2012).

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations as true. *See Brooks v. Blue*

*Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). But pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

B.    **Claims for Tortious Interference**

"To prove tortious interference, Plaintiff must show: (1) the existence of a contract or business relationship not necessarily evidenced by an enforceable contract under which [the plaintiff] has rights; (2) defendants' knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by defendants; and (4) damage as a result of the interference." *Mobile Shelter Sys. USA, Inc. v. Grate Pallet Sols., LLC*, 845 F. Supp. 2d 1241, 1258 (M.D. Fla. 2012) (citing *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 385 (Fla. 4th DCA 1999)). "[A]n action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994). Put another way, the plaintiff must plead facts establishing that the defendant's actions actually caused the alleged harm to a business relationship. *See Realauction.com, LLC v. Grant St. Grp., Inc.*, 82 So. 3d 1056, 1058 (Fla. 4th DCA 2011).

A tortious interference claim cannot be premised on a prior filed lawsuit as an absolute privilege exists for any acts necessarily preliminary to a judicial proceeding. *BOCA Inv'rs Grp., Inc. v. Potash*, 835 So. 2d 273, 274 (Fla. 3d DCA 2002) (affirming dismissal of a tortious interference claim based on three prior lawsuits where "all of the acts alleged in

4

support of the tortious interference claim bear a relationship to the [prior] proceedings"). "[A]bsolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves . . . tortious behavior . . . so long as the act has some relation to the proceeding." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994).

### III. DISCUSSION

UWS's counterclaim for tortious interference should be dismissed because the conclusory and inconsistent allegations do not establish a claim for relief that is plausible on its face. UWS has not plead facts that establish any actions taken by AA were the proximate cause of alleged damage to the business relationship between UWS and FAME. Consequently, UWS has not established the requisite elements for a tortious interference claim.

UWS's counterclaim is predicated on two acts by AA—sending the May 6, 2016 email and filing the present lawsuit. As an initial matter, AA's complaint cannot, as a matter of law, provide a cognizable basis for UWS's tortious interference claim. *See, e.g.*, *BOCA Inv'rs Grp., Inc.*, 835 So. 2d at 274. Any actions taken with regard to a judicial proceeding are subject to an absolute privilege. *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A.*, 639 So. 2d at 608. Sending the May 6, 2016 email is, therefore, the only conceivable factual basis on which UWS could assert a tortious interference claim. But even assuming *arguendo* that filing a lawsuit could provide further evidence of AA's specific and malicious intent, as alleged by UWS (Counterclaim ¶ 14), UWS's rote allegation in this regard is insufficient to support a claim for tortious interference.

5

It is undisputed that UWS entered the FAME contract ten days *after* the May 6, 2016 email and *before* AA filed suit against UWS. This timeline severely undercuts UWS's claim that its relationship with FAME was damaged by AA's actions. The alleged threat of legal proceedings made by AA in the May 6 email evidently did nothing to dissuade FAME from entering a contract with UWS for the delivery of rifles. Nor could the actual initiation of legal proceedings have impacted the parties' decision to enter a contractual relationship given that the lawsuit was filed nearly a month after the agreement was entered. Thus, filing this lawsuit could not possibly have interfered with the FAME agreement. And UWS does not advance any factual allegations that would tend to suggest the lawsuit caused FAME not to issue purchase orders subsequent to entering the contract. To state a plausible claim for relief, UWS is required to allege factual matter that would in some way connect the two events.

Similarly, UWS does not attempt to explain how the May 6 email could cause FAME to withhold purchase orders for rifles but not deter FAME from actually entering an agreement for the manufacture and delivery of such rifles. The counterclaim offers only the single allegation that "[a]s a direct and proximate result of its receipt of the Adams Email and complaint concerning this agreement has been filed in this Court, FAME has refused to issue any purchase orders for the rifles." (Counterclaim ¶ 24) Such a conclusory allegation unadorned by factual support is not entitled to a presumption of truth, *see Iqbal*, 556 U.S. at 679, and the allegation amounts to nothing more than a formulaic recitation of an element of the counterclaim, *see Twombly*, 550 U.S. at 555. Moreover, the counterclaim contains no

allegation that FAME was required to have issued purchase orders by a certain date and did not do so, let alone any allegations that the agreement has been terminated by FAME.

The lack of any factual allegations that would permit a reasonable inference of causation of any harm is fatal to UWS's counterclaim. The case *Realauction.com, LLC v. Grant Street Group., Inc.* is instructive in this regard. There, the Florida appellate court remanded with direction to enter judgment in favor of Realauction.com where the claimant, Grant Street Group, failed to make the requisite showing that an email sent by Realauction.com's president actually caused Grant Street to lose the contract at issue. *Realauction.com*, 82 So. 3d at 1060. The email, sent to a potential customer of Grant Street's, reported that Grant Street was under investigation by the Attorney General and was "being sued by some of the major institutional buyers because of their business practices." *Id.* at 1058. Grant Street's contract negotiations with the customer stalled, but at trial Grant Street was not able to present any evidence, other than self-serving testimony from its own president, that the email was the reason why the negotiations did not come to fruition. *Id.* at 1059. Similarly, UWS's counterclaim in this case does not advance any support at all other than its own conclusory assertion that indicates the May 6 email had anything to do with the lack of purchase orders from FAME or even that FAME was required to have issued purchase orders by a certain timeline and did not do so.

In the same vein, UWS has also not plead with the requisite specificity that AA's actions actually interfered with UWS's contractual or business relationship with FAME or that UWS was damaged. Again, perhaps the one thing that UWS did plead with particularity is that it entered the FAME agreement after receiving the May 6, 2016 email and before this

7

case was filed. The May 6 email, thus, did not deter the parties from entering an agreement, and the lawsuit could not possibly have deterred the parties from entering the agreement. There are no allegations that FAME has since rescinded or attempted to rescind the agreement. The counterclaim is devoid of factual allegations specifying how the May 6 email or this lawsuit impacted the parties' contractual relationship. Without such allegations, there is no interference with the contract and no harm to UWS.

The extend of the harm alleged by UWS is that it had a reasonable expectation it would receive purchase orders and that FAME has refused to issue purchase orders as a result of AA's conduct. (Counterclaim ¶ 12, 24) As mentioned, noticeably absent are factual allegations indicating that there was a delivery schedule, a deadline to issue purchase orders that was missed, or some other obligation that went unfulfilled by FAME. Standing alone, the mere fact that no purchase orders have been issued where there was no obligation to do so does not demonstrate interference by AA or harm to UWS. As the agreement is still in place, the mere fact that UWS has not yet received a purchase order in no way demonstrates interference by AA or harm to UWS, and UWS's counterclaim is insufficiently pleaded as a result.

UWS has not alleged facts or circumstances that suggest the May 6 email and subsequent litigation interfered with the FAME contract or the issuance of purchase orders. Absent allegations that establish an actual and identifiable business relationship or expectancy that would have been completed if AA had not interfered, UWS cannot maintain a claim for tortious interference, and its counterclaim should be dismissed with prejudice.

## IV. CONCLUSION

For the foregoing reasons, AA respectfully requests that the Court grant the present motion and dismiss with prejudice the counterclaim for tortious interference asserted by Defendant UWS.

Dated:  August 2, 2016.                    Respectfully submitted,

/s/ Mindi M. Richter
Jaime Austrich, Trial Counsel
Florida Bar No. 84565
jaustrich@slk-law.com
J. Todd Timmerman
Florida Bar No. 0956058
ttimmerman@slk-law.com
Mindi M. Richter
Florida Bar No. 0044827
mrichter@slk-law.com
101 East Kennedy Boulevard
Suite 2800
Tampa, Florida 33602
Telephone No.: (813) 229-7600
Facsimile No.:  (813) 229-1660

*Attorneys for Plaintiff, Adams Arms, LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 2, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic filing to all counsel of record.

/s/ Mindi M. Richter
Attorney
