**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ADAMS ARMS, LLC,**

      **Plaintiff,**

**v.**                                **Case No.: 8:16-CV-1503-T-33AEP**

**UNIFIED WEAPON SYSTEMS, INC.,**
**AGUIEUS, LLC,**
**MICHAEL C. BINGHAM,**
**CHRISTIAN QUINTANILLA AURICH, and**
**MAJOR GENERAL JAMES W. PARKER,**

      **Defendants.**

_____/

**ADAMS ARMS, LLC'S RESPONSE IN OPPOSITION TO DEFENDANTS'**
**EMERGENCY MOTIONS TO QUASH, FOR PROTECTIVE ORDER, AND FOR**
**INTERIM ORDER PENDING ADJUDICATION AND**
**INCORPORATED MEMORANDUM OF LAW**

The Defendants' two Motions to Quash, for Protective Order, and for Interim Order Pending Adjudication and Incorporated Memorandum of Law (Dkts. 84 & 85) request that this Court quash subpoenas sent by Adams Arms, LLC ("AA") to its own vendors and prevent AA from obtaining information on any dealings Defendants may have had with AA's vendors since the time Defendants were introduced to such vendors through AA.

All of Defendants' arguments, supported by no actual evidence, but rather mere conclusory statements, fail. First, AA did in fact provide Defendants notice of the subpoenas before any of them were served, and Defendants notably assert zero substantiation for stating otherwise other than an apparent hunch that the subpoenas must have been served prior to notice. Second, that Defendants may be worried about vendor reactions to the subpoenas does not somehow equate to "good cause" sufficient to justify a protective order. Notably, Defendants do

1

not argue that the subpoenas seek irrelevant information or that none of the vendors would have responsive documents, and to the extent any responsive documents might contain confidential information, the vendors, as well as the Defendants, could assign appropriate confidentiality designations to them.  Third, the enclosure of the Stipulated Agreement and related Order with the subpoenas, two publicly available documents on PACER, in no way violates the parties' Stipulated Agreement or this Court's Order.  The bottom line is that while Defendants may well be unhappy about the subpoenas, and have concerns about what the documents produced in response to the subpoenas will show, that of course does not justify an order preventing AA from pursuing and obtaining highly relevant discovery to which it is clearly entitled under the rules. Defendants' Motions must be denied.

## I.     Background

AA is a weapons manufacturer founded and based in the Tampa Bay area that provides cutting edge technology with regard to the development and manufacture of high-powered military rifles.  In early 2014, AA began developing high-powered military rifles for ultimate sale to the Peruvian military and police through Defendants Aguieus and UWS.  The project required AA to provide UWS with functioning demonstration rifles for testing by the Peruvian Ministry of Defense ("MOD").  In addition, AA was required to provide Aguieus and UWS with access to AA's trade secret, proprietary, and confidential information, as well as a tour of AA's facilities.  The Peruvian MOD was purportedly funding the purchase through the Peruvian Factory of Weapons and Ammunition from the Army S.A.C. ("FAME").

On or about February 24, 2014, Defendant Aguieus entered two Mutual Confidentiality and Nondisclosure Agreements with AA in which Aguieus agreed not to use AA's confidential information, including AA's technical data, trade secrets, and know-how, for its own use or for

any purpose other than the commercial relationship with AA (the "NDA").  The NDA, executed by Defendants Aurich and Bingham, permitted Aguieus to disclose AA's confidential information to other parties, including UWS, so long as such parties acknowledged and agreed to be bound by the NDA.

To memorialize the terms of the parties' joint venture, UWS and AA also entered a Letter of Intent ("LOI") dated April 29, 2014 and executed by Defendant Bingham.  The LOI contains a number of material terms, including a provision granting AA exclusive negotiating rights on the project.  Notably, the LOI also stated that "[t]he Confidentiality Agreement is hereby ratified and confirmed as a separate agreement between the parties thereto."

In reliance upon the LOI and the NDA, and multiple prior and subsequent representations and assurances that there would be significant orders worth in excess of $100 million, AA disclosed its proprietary confidential information, including AA's technical data, trade secrets, and know-how, to Defendants UWS, Aguieus, Bingham, Aurich, and Parker.  In particular, in December 2014, Mr. Bingham accepted delivery of AA demonstration rifles that were utilized in a successful demonstration before the Peruvian MOD less than two months later.  Throughout the following year, AA continued to provide Defendants with access to AA's trade secrets and confidential information that included vendor pricing information and detailed information concerning AA's manufacturing facility.

On December 10, 2015, Defendant UWS submitted a qualified offer in response to a bid solicitation using AA's designs, procedures, and specifications.  UWS was awarded the bid by FAME shortly thereafter.  In late May or early June of this year, UWS announced that it entered into a technology transfer contract with FAME that was undoubtedly a contract for the sale of AA's rifles using all of the designs, specifications, and processes divulged under false pretenses

by AA.  Upon discovering that Defendants had utilized AA's confidential information and trade secrets to enter an agreement with the Peruvian government, apparently without the intent to further utilize AA to provide the rifles, AA filed the present suit seeking damages and injunctive relief, as well as a Motion for Preliminary Injunction to, in part, prevent Defendants from further utilizing and/or disclosing any of AA's confidential information and trade secrets.

As a result of the parties' mediation, which took place two days before the hearing set on AA's Motion for Preliminary Injunction, the parties entered into a Stipulated Agreement, which was confirmed by this Court's Order.  *See* Dkt. 67 & 76.  Under the Stipulated Agreement, Defendants, and all persons or entities in active concert or participation with them, cannot use or disclose any of AA's confidential information or trade secrets.  *See* Dkt. 67 at ¶ 9(a).  One of the many pieces of confidential information that AA provided to Defendants was its proprietary list of vendors, including some of its key contacts, and it directly introduced Defendants to some of the vendors pursuant to the parties' agreement that AA would be manufacturing and supplying weapons through Aguieus and UWS to the Peruvian government.  Although Defendants assert that they are not using or disclosing any of AA's confidential information or trade secrets, AA, as its Complaint lays out, believes the facts are otherwise.  In AA's view, it would be impossible for Defendants to proceed with their FAME contract, which was awarded based on AA's weapons and designs, without utilizing AA's confidential information and trade secrets.  To that end, to the extent Defendants have contacted and/or further proceeded with any of AA's vendors in their effort to supply weapons to the Peruvian government without AA's involvement, they almost certainly have breached the NDA, engaged in trade secret misappropriation, and violated the Stipulated Agreement and Court Order.  For example, if Defendants have contacted vendors, whom they would not have known but for AA, and requested that the vendor make weapon parts

4

for Defendants based on AA's drawings or other proprietary information, their breaches and misappropriation will be blatantly clear.  It is for this reason that AA issued subpoenas to each of the applicable vendors with only six narrowly requested topics in relation to potential communications and work with Defendants.  Such information is unquestionably relevant and could prove to be very telling in this case.  In addition, given that the Stipulated Agreement prohibits not only Defendants, but also any person or entity acting in active concert or participation with them, from using or disclosing AA's confidential information and trade secrets, AA also provided each vendor with a copy of the applicable Stipulated Agreement and Order along with the subpoena.  Defendants have now moved to quash the subpoenas and for a protective order.  For the following reasons, the Motions should be denied.

## II.     Argument

### A.     AA did not violate any requirements of Rule 45.

Under Rule 45, parties issuing subpoenas should provide notice to the other parties before serving the subpoenas.  The Rule does not contain any specific timeline or number of days that a party must wait between providing notice and serving the subpoenas; rather it merely states that notice must be served on each party before the subpoenas are served on the third parties.  Defendants argue that the subpoenas should be quashed because "Plaintiff began hand serving the Subpoenas even before any counsel for the Defendants had even received their delivery of U.S. Postal mail."  *See* Dkt. 84 at 5.  The foundation of this assertion is a mystery, as Defendants point to no evidence that any particular subpoena (let alone every one of them) was served prior to the Defendants' receipt of the notice on August 2, 2016.  To the contrary, the undersigned counsel signed the subpoenas on August 1, 2016, and put copies of each of them in the mail to Defendants on that same day.  *See* Exhibit A at ¶ 3.  As Defendants admit, they in fact received

the notice the very next day, August 2, 2016.[1]   On August 2, 2016, counsel for AA began sending out the subpoenas to process servers in the applicable states, but no subpoenas were served on that day, and there was no instruction for any of them to be served on a rush or expedited basis.   *See* Exhibit A at ¶¶ 4 & 5.   Therefore, Defendants did in fact receive notice before service of any of the subpoenas.[2]   AA in no way violated the notice provision of Rule 45, and Defendants' assertions to the contrary are baseless.[3]

Defendants Aguieus and Bingham further argue that some of the subpoenas should be quashed because the subpoenas provide a location for production of the documents in Tampa, Florida, which for some of the vendors is more than 100 miles from their location.   Dkt. 85 at 7. First of all, this is not an objection that any of the Defendants have standing to make.   While parties may challenge subpoenas issued to non-parties in certain instances, the parties have to have a "personal right or privilege" with respect to the subpoenas.   *Netjets Aviation, Inc. v. Peter Sleiman Dev. Group, LLC,* 2011 WL 6752488, *1 (M.D. Fla. Dec. 22, 2011).   As this Court has specifically recognized, Defendants have no personal right or privilege with respect to the requirement of the place of production for the documents and thus cannot challenge it.   *Belcher v. A&M Business Properties, Inc.*, 2015 WL 4527575, *2 (M.D. Fla. July 27, 2015) (denying party's motion to quash based on arguments that the subpoena would "injure business

---

[1] Counsel for Defendants UWS and Aurich admits receipt of the notice on August 2, 2016 and with no support or documentation, asserts that counsel for Defendants Aguieus, Bingham, and Parker did not receive the notice until August 3, 2016 (Dkt. 84 at 3).   Notably, though, counsel for Defendants Aguieus, Bingham, and Parker, located just down the street from counsel for the other Defendants, never even states in his Motion when the notice was actually received.   Presumably, he also received the notice on August 2, 2016, whether or not the mail was actually opened that day.

[2] Defendants make much of the fact that the notice to them was sent by mail as opposed to email or some other method.   Service by mail is a common service method specifically permitted under the Rules, with service being complete "upon mailing."   *See* Rule 5(b)(2)(C).   Moreover, service by electronic means is permitted only if each party consents in writing, which they have not in this case, not to mention that, with 33 subpoenas at issue, email would not have been a practical service method.

[3] It is unclear how many days notice AA would have needed to give to Defendants in order to appease them; despite couching their motions as an "emergency," they had notice of the subpoenas for about a week before filing them. Rule 45 in no way requires a party to wait that long to serve a subpoena after providing notice.

relationships" and required production at a location more than 100 miles away due to a lack of standing). In addition, each subpoena contained a note that "in lieu of producing documents in person, they may be mailed to: Shumaker, Loop & Kendrick, LLP." *See* Exhibit A to Defendants' Motions. This is because from a practical standpoint, most subpoenaed parties do not appear in person, but rather mail or email their documents. If any of the subpoenaed parties had a problem with the production location, they could of course feel free to raise it with AA themselves, but this does not serve as an avenue for Defendants to quash the subpoenas.

## B. Defendants fail to show any good cause for entry of a protective order.

Defendants next argue that they are entitled to a protective order under Rule 26. While the specific reason for a protective order is not entirely clear, Defendants assert that the same is necessary to "prevent harassment" and "protect their reputation." The discovery rules are broad, with parties permitted to obtain discovery on any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. *See* Rule 26(b)(1). Under Rule 26, courts may issue orders to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense," but good cause must be shown. Defendants have the burden to show good cause, and they must meet this burden "with a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Barlow v. Dupree Logistics, LLC*, 2015 WL 4646812, *1 (N.D. Ala. Aug. 5, 2015), *citing Ekokotu v. Federal Exp. Corp.*, 408 F. Appx. 331, 336 (11th Cir. 2011); *see also Netjets Aviation, Inc.,* 2011 WL 6752488, *1-2.

While Defendants make sweeping statements that a protective order is needed to "protect their reputation" and that AA is somehow attempting to "harass and injure" Defendants, similar to their Rule 45 argument, these assertions are made without any support. As noted, the

subpoenaed parties are vendors or contacts of AA (not any particular known vendors or customers of Defendants). During AA's dealings with Defendants, AA provided Defendants with its confidential vendor list and contacts and introduced them to some of the vendors in furtherance of developing weapons for the Peruvian government. While Defendants claim they are not using or disclosing any of AA's confidential information or trade secrets in proceeding with the Peru deal without AA, to the extent they are now continuing to utilize AA's vendors and/or exchanging and utilizing AA's confidential information with the vendors, they are engaging in a breach of the NDA and the LOI, as well as trade secret misappropriation, and are in direct violation of the parties' Stipulated Agreement. AA suspects, for example, that Defendants are proceeding with some of the vendor contacts provided by AA and requesting the vendors to make parts for the weapons based on AA's drawings and other proprietary information. Defendants' admission that they are now working with at least 3 of the vendors (AO Precision, Artisan Arms, and Trenton Forging) only further confirms AA's concerns and purpose for issuing the subpoenas. *See* Dkt. 85 at 7. AA's concerns were further validated when, within minutes after this Court entered the order staying production for the subpoenas, Defendant Bingham sent an email to an unidentified group of at least some of the vendors, telling them that they must stay production. Tellingly, at least one of the vendors who received the email from Defendant Bingham was one introduced to him directly by AA, with which Defendants previously had no relationship. This is likely only the tip of the iceberg, and the subpoenas are narrowly tailored to these points requesting only 6 categories of documents, information to which AA is clearly entitled. The purpose in issuing the subpoenas was to obtain this highly relevant discovery, not to harass the Defendants. Moreover, it is unclear how AA

subpoenaing its own vendors would somehow result in harassment of Defendants.[4]  If anything, AA is risking its own reputation by bothering its own vendors and contacts.

Defendants further assert that AA somehow "circumvented the Stipulation" and related Order by providing copies of them with the subpoenas.  Again, the basis for this is unclear.  Both the Stipulated Agreement and the Order are publicly available documents that can be viewed by anyone on PACER.  Nowhere in the Stipulated Agreement does it state that copies of it cannot be provided to anyone by the parties.  The only restriction in the Stipulated Agreement in that regard is that no party can "publish any comment, press release, or statement related to this Order outside of a legal proceeding."  AA has not published any comment, press release, or statement related to the Stipulated Agreement, and Defendants could not claim otherwise.  AA merely enclosed copies of the Stipulated Agreement and related Order with the subpoenas, and the reason for doing so is obvious—the Stipulated Agreement prohibits Defendants and their "representatives, officers, agents, servants, lessees, employees, affiliates, subsidiaries, or other persons or entities in active concert or participation with them" from using or disclosing any of AA's confidential information or trade secrets.  *See* Stipulated Agreement at 9(a).  To the extent any of the third parties subpoenaed are servants or agents of, or are otherwise in active concert or participation with, Defendants (which by Defendants' own admission at least 3 of them are), they need to be notified of this restriction in relation to AA's confidential information and trade secrets.  Nowhere in the Agreement does it state that AA would not be entitled to put any such parties on notice by giving them a copy of the Stipulated Agreement, and AA would never have agreed to any such restriction.  AA did not circumvent or in any way violate the Stipulated Agreement or Order.

---

[4]  As noted above, Defendants lack standing to quash the subpoenas based on concerns of injuring business relationships.  *Belcher*, 2015 WL 4527575.  Along those lines, they should not be permitted to circumvent the standing rule under Rule 45 by merely making the same argument couched under Rule 26.

Defendants Aguieus and Bingham further argue that a protective order is necessary because some of the subpoenaed parties might produce documents containing Defendants' confidential or proprietary information.  *See* Dkt. 85 at 6.  While they fail to describe what specific kinds of information that would be, Mr. Bingham's declaration states that three of the vendors may have "technical data and drawings."  First, it is ironic that Defendants would consider such information to be trade secrets or otherwise confidential given that they argue AA's technical data and drawings are somehow not entitled to trade secret protection.  Even more ironic is the fact that any such information of that type provided to the vendors by Defendants likely originated from and belongs to AA in the first place.  Regardless, though, even if some of the vendors do have confidential information to produce, they would presumably be under an obligation to mark it confidential and could address that with AA, and AA's counsel has already told Defendants that it would be willing to wait to share any documents produced by the parties with AA until Defendants have a chance to view the documents and mark them with whatever confidential or attorneys' eyes only designation they may see fit.[5]  Moreover, regardless of whether the documents to be produced may contain confidential information of Defendants, this alone would not entitle Defendants to a protective order such that AA would not be entitled to highly relevant information merely because it may be confidential.  Instead, the parties should and will enter into a Confidentiality Agreement to govern the production of relevant and responsive documents that might contain confidential or trade secret information.

## III.   Conclusion

The subpoenas at issue request highly relevant information to which AA is unquestionably entitled.  That Defendants are unhappy that the subpoenas were issued and would

---

[5] Adams Arms circulated a draft Confidentiality Agreement to govern documents produced in the case, including third party documents, nearly a month ago on July 18, 2016.  Despite multiple follow ups, Adams Arms only just received an initial round of comments from some of the Defendants on August 9, 2016.

prefer to prevent AA from obtaining their communications with AA's vendors in no way serves as grounds to quash the subpoenas under Rule 45 or for entry of a protective order under Rule 26. Defendants' Motions should be denied. While AA will be fully prepared to present these arguments to the Court on August 31, 2016, if the Court would find a hearing helpful, given the baseless and bare assertions provided in Defendants' Motions, AA asserts that the Court could and should deny them without the need for a hearing. AA also requests its fees and costs in relation to responding to the Motions.

WHEREFORE, AA respectfully requests the Court to deny Defendants' Motions to Quash and for Protective Order.

Dated: August 15, 2016.                         Respectfully submitted,

                                                /s/ Mindi M. Richter
                                                Jaime Austrich, Trial Counsel
                                                Florida Bar No. 84565
                                                jaustrich@slk-law.com
                                                J. Todd Timmerman
                                                Florida Bar No. 0956058
                                                ttimmerman@slk-law.com
                                                Mindi M. Richter
                                                Florida Bar No. 0044827
                                                mrichter@slk-law.com
                                                101 East Kennedy Boulevard
                                                Suite 2800
                                                Tampa, Florida 33602
                                                Telephone No.: (813) 229-7600
                                                Facsimile No.:  (813) 229-1660

                                                *Attorneys for Plaintiff, Adams Arms, LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 15, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic filing to all counsel of record.

/s/ Mindi M. Richter
Attorney