UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ADAMS ARMS, LLC,

    Plaintiff,

v.                                                                          CASE NO.: 8:16-cv-1503-VMC-AEP

UNIFIED WEAPONS SYSTEMS, INC.,
AGUIEUS, LLC, MICHAEL BINGHAM,
CHRISTIAN QUINTANILLA AURICH, and
MAJOR GENERAL JAMES W. PARKER,

    Defendants.

_____/

**DEFENDANT/COUNTERCLAIMANT'S, UNIFIED WEAPONS SYSTEMS, INC., RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS DEFENDANT UNIFIED WEAPONS SYSTEM [SIC], INC.'S COUNTERCLAIM FOR TORTIOUS INTERFERENCE [Doc. 81] AND INCORPORATED MEMORANDUM OF LAW**

    Defendant/Counterclaimant, UNIFIED WEAPONS SYSTEMS, INC. ("UWS"), by and through its undersigned counsel, respectfully requests that this Honorable Court deny Plaintiff's, ADAMS ARMS, LLC ("AA") Motion to Dismiss UWS's Counterclaim for Tortious Interference [Doc. 81] ("Motion") and, pursuant to Local Rule 3.01(b), files its memorandum of law in opposition to the Motion as follows:

*FACTUAL BACKGROUND*

    The following facts alleged in UWS's Counterclaim [Doc. 52] must be taken as true for purposes of AA's Motion:

    On or about December 18, 2015, UWS won a bid with F.A.M.E., S.A.C., a Peruvian Corporation ("FAME") for a contract involving the manufacture of rifles in Peru. (Counterclaim ¶¶ 5, 8.) UWS informed AA that it had won the bid and, on May 6, 2016, just ten (10) days before UWS and FAME executed the written contract, AA's President and CEO wrote a scathing and

threatening email to FAME officials falsely claiming that UWS could not deliver under the contract without using AA's patented technology, insinuating that FAME's deal with UWS was improper, boasting about connections in Washington and Peru, and threatening to use those connections to "insure that anyone that did allow this solicitation to become corrupt gets the punishment they deserve." (Counterclaim ¶¶ 7, 9, 15; Ex. "B.")  AA subsequently filed the instant lawsuit on June 10, 2016. (Counterclaim ¶ 10.)

UWS had a reasonable expectation that FAME would issue purchase orders to UWS under the contract, providing a substantial economic benefit, yet because of AA's intentional interference and threatening communications FAME has refused to issue a single purchase order. (Counterclaim ¶¶ 12, 24.)  AA knew of the relationship and contract between UWS and FAME, and yet sent the defamatory email with the specific and malicious intent of interfering with and disrupting the same. (Counterclaim ¶¶ 11, 13, 21; Ex. "B.")  As a result of AA's intentional and unjustified interference, UWS has suffered damages. (Counterclaim ¶ 26.)

## LEGAL ARGUMENT

### *The Counterclaim States a Cause of Action for Tortious Interference*

AA's Motion should be denied.  UWS's Counterclaim more than satisfies the liberal notice pleading standard required to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  As this Court has articulated, in denying a motion to dismiss a tortious interference claim:

> The threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low.  Federal Rule of Civil Procedure 8(a) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Liberal notice pleading standards embodied in Rule 8(a) do not require that a plaintiff specifically plead every element of a cause of action or set out in precise detail the specific facts upon which she bases her claim.  The complaint need only contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory. *Thompson v. Rinker Materials of Florida, Inc.*, 390 F. Supp. 2d 1165, 1167–68 (M.D. Fla. 2005) (Internal citations and quotations omitted.)

The elements required to state a cause of action for tortious interference are: "(1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights, (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) resulting damage." *Burge v. Ferguson*, 619 F. Supp. 2d 1225, 1238 (M.D. Fla. 2008). In *Burge*, this Court denied a 12(b)(6) motion to dismiss a tortious interference claim between two dentists which alleged that the defendant "provided false information about the plaintiff's Medicaid billing practices to the plaintiff's patients and told the patients that the plaintiff committed malpractice and as a result, a significant number of the plaintiff's former patients now obtain treatment from [defendant]." *Id.* at 1240 (internal citations omitted). The court held that even though the allegations were "somewhat vague," they were sufficient to satisfy Rule 8(a)'s simplified notice pleading standard. *Id.*, citing *Future Tech Int'l, Inc. v. Tae Il Media, Ltd.,* 944 F.Supp. 1538, 1570 (S.D.Fla.1996) ("Although the complaint is drafted at a high order of abstraction, and does not specifically identify each of the [business] relationships allegedly interfered with, we are hard pressed to conclude that at this early stage of the proceedings that [the plaintiff] could prove no facts to support its cause of action. Additional specificity is not required under our liberal system of notice pleading.")

UWS's Counterclaim is far more specific than the pleadings at issue above and certainly suffices to meet the requirements of Rule 8(a) and survive AA's Motion. UWS has alleged facts supporting each element of a tortious interference claim: (1) the existence of a business relationship with FAME that affords UWS existing or prospective legal rights, (2) knowledge of the relationship on the part of AA; (3) an intentional and unjustified interference with the relationship by AA by sending a defamatory and threatening email to FAME just as UWS and FAME were

getting ready to ink the deal; and (4) resulting damage. Additional specificity is not required and AA's Motion must be denied.

AA argues that the Counterclaim should be dismissed because AA's email predated (by 10 days) the formal signing of UWS's contract with FAME and therefore, according to AA, the email did not damage the relationship. While AA is free to make that argument in the case, it is not a proper basis for dismissal under Rule 12(b)(6). UWS has alleged that-notwithstanding the signed contract-AA's interference has caused FAME to refuse to issue any purchase orders, effectively depriving UWS of its expected benefits under that contract. The specific facts and circumstances surrounding FAME's receipt of AA's email and the effects it had on FAME and its relationship with UWS are questions going to the merits of the case, not items that UWS is required to plead in its Counterclaim to state a cause of action. *See Ventrassist Pty Ltd. v. Heartware, Inc.*, 377 F. Supp. 2d 1278, 1285 (S.D. Fla. 2005) (internal quotations omitted) ("The purpose of a motion to dismiss under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merit of the plaintiff's case.")

AA's argument that the Counterclaim should be dismissed because UWS does not allege a contractual deadline for FAME to issue purchase orders is equally unavailing. UWS has alleged a reasonable contractual expectation to receive purchase orders from FAME, and that purchase orders have not come specifically because of AA's intentional and unjustified interference. The absence of a contractual deadline or hard requirement to issue purchase orders is irrelevant to whether UWS has stated a claim for tortious interference. As AA acknowledges in its Motion, even the existence of a contract is not required to state a tortious interference claim, only a business relationship affording rights to the parties. *Mobile Shelter Sys. USA, Inc. v. Grate Pallet Sols.,*

LLC, 845 F. Supp. 2d 1241, 1258 (M.D. Fla. 2012). Moreover, courts have repeatedly acknowledged that an at-will relationship can satisfy the business relationship element of a tortious interference claim. *See Rudnick v. Sears, Roebuck & Co.,* 358 F. Supp. 2d 1201, 1205–06 (S.D. Fla. 2005).

### *The Counterclaim is Not Barred by Litigation Privilege*

Finally, AA argues that its Complaint cannot serve as a basis for UWS's tortious interference claim because it is covered by the litigation privilege. UWS does not disagree with the general premise that litigation privilege would preclude a tortious interference claim premised solely on the filing of a judicial complaint, however, as acknowledged by AA, UWS's claim is based on AA's action-prior to the instigation of any legal proceedings-of sending a defamatory and threatening email to FAME concerning its deal with UWS. The filing of the complaint only served to further evidence AA's intent to interfere with UWS's deal, but it is not the basis for UWS's tortious interference claim. *See Burge*, 619 F. Supp. 2d at 1239–40 ("Because the complaint asserts a tortious interference claim based in part on acts outside a judicial proceeding and in part on acts following dismissal of the criminal charges against the plaintiff, dismissal under the litigation privilege is unwarranted.")

### CONCLUSION

UWS's Counterclaim sufficiently states a cause of action for tortious interference and AA's arguments to the contrary are without merit. For all of the foregoing reasons, UWS respectfully requests that this Honorable Court enter an Order denying AA's Motion to Dismiss UWS's Counterclaim, together with any other and further relief the Court deems just under the circumstances.

BY:   */s/ Courtney Fernald*

        Leonard S. Englander, Esq.
*Lead Trial Counsel*
Florida Bar No.: 198846
Primary:  eservice@eflegal.com
Secondary: chanley@eflegal.com
Beatriz McConnell, Esq.
Florida Bar No.: 42119
Primary: bmcconnell@eflegal.com
Secondary: tdillon@eflegal.com
Joseph Wesley Etter IV, Esq.
Florida Bar No.: 83814
Primary: jetter@eflegal.com
Secondary:  creeder@eflegal.com
ENGLANDER FISCHER
721 First Avenue North
St. Petersburg, Florida 33701
Telephone:  (727) 898-7210
Telefax:  (727) 898-7218
*Attorneys for UWS*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this date a true and correct copy of the foregoing has been served via CM/ECF to:  Jaime Austrich, Esq., jaustrich@slk-law.com, J. Todd Timmerman, Esq., ttimmerman@slk-law.com, Mindi M. Richter, Esq., mrichter@slk-law.com, 101 East Kennedy Boulevard, Suite 2800, Tampa, Florida 33602; Aguieus, LLC, Major General James W. Parker, U.S.A., Retired, and Michael C. Bingham, c/o Matthew B. Sullivan, Esq., matthewbsullivan@aol.com,  4756 Central Avenue, St. Petersburg, FL 33711.

        */s/ Courtney Fernald*
        Attorney for Defendant UWS